**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **DINO MANCHISI,** | : | |
| **PLAINTIFF,** | : | |
| | : | **CIVIL ACTION NO.:** |
| | : | **3:10-CV-758 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **LOCAL 295, INTERNATIONAL** | : | |
| **BROTHERHOOD OF TEAMSTERS,** | : | |
| **DEFENDANT.** | : | **APRIL 13, 2012** |

**MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER REMANDING THE CASE TO THE SUPERIOR COURT**

**Before the Court is a motion for summary judgment filed by the Defendant union, Local 295, International Brotherhood of Teamsters ("Local 295"). The Plaintiff, Dino Manchisi ("Manchisi") brought this suit alleging negligent misrepresentation, intentional infliction of emotional distress and negligent infliction of emotional distress.[1] On May 17, 2010, this case was removed by the Defendant from the Connecticut Superior Court in the Judicial District of Ansonia/Milford to the District Court of Connecticut. For the reasons stated hereafter, the case is hereby remanded to Connecticut Superior Court.**

## I. Factual Background

**Manchisi was employed by DHL Express ("DHL") for fifteen years as a courier-driver, working in Wallingford, Connecticut. [Dkt. #48, Pl. Rule 56(a)(2) Stmt. ¶ 1]. While employed by DHL, Manchisi was a member of Local 295,**

**[1] These are the First, Third and Fourth Counts of the Complaint. The Second Count is not well developed and does not appear to state an independent claim that is distinct from these three causes of action. [*See* Dkt. #1, Compl., ¶¶9-12]**

**International Brotherhood of Teamsters. *Id.* at ¶4. Defendant Local 295 represented DHL employees in Connecticut, New York, and New Jersey. *Id.* at ¶5. In October 2008, DHL notified its employees, including Manchisi, that its domestic delivery service would be discontinued and the company would operate exclusively as an international delivery business. *Id.* at ¶6. As a result of this downsize, DHL informed its employees that it would be reducing its workforce and consolidating work stations. *Id.* at ¶7.**

**On October 29, 2008, Manchisi received a notice from DHL titled "Reduction in Local 295 Workforce" identifying him as "a driver who will be affected by this layoff" and advising him about the general bidding process. [Dkt. #47, Pl. Mem. in Opp. to SJ, Ex. 1, Ex. B]. On December 15, 2008, Manchisi received another notice from DHL, providing finalized instructions for participation in the bidding process. [Dkt. #47, Ex. 1, Ex. C]. The letter stated that 793 positions were available for bids, including 208 temporary positions, and 585 "future state" positions involving company projects in the New York Area. *Id.* The letter noted that the "future state" positions may be subject to future layoffs depending on the "retention and growth of DHL's international business," but noted that reduction of the "future state" positions would only occur by "Master Seniority." *Id.* The letter further instructed that, "employees who obtain temporary positions <u>may not</u> bid for 'future state' positions after the end of their temporary assignment."[2] [*Id.* at p. 1, ¶2 (emphasis in original)]. Rather, the letter stated that,**

**[2] "Future state" positions are "positions which the Company projects are needed to support the continuing international business of DHL," i.e.: they are permanent positions. [*Id.* at p. 1, ¶2].**

**"[the temporary] position will end at some time in February, at which point you will have the option of moving to the recall list or accepting severance." [*Id.* at p. 1, ¶ 5].**

**Further, Manchisi alleges that following his receipt of the letters describing the bid process, the Vice President of Local 295, Patrick Scheer ("Scheer") represented to him "that there was no chance that any of the two hundred and eight temporary positions would become permanent. [Dkt. #48, Pl. Rule 56(a)(2) Stmt. ¶11]. Manchisi alleges that he relied on these representations and elected not to bid on the temporary positions. *Id.* at ¶15. Moreover, Manchisi concluded that based on his seniority level and the number of available positions, he would not be able to retain a permanent position. *Id.* at ¶13. Manchisi resigned from his position at DHS by signing a waiver and release on January 9, 2009. *Id.* at ¶¶17-18. Manchisi alleges that he subsequently learned, contrary to the representations of Scheer and the two Local 295 letters describing the bidding process, that individuals who bid on and accepted temporary positions would be eligible to bid on new permanent positions in February, 2009. *Id.* at ¶16.**

## II. Standard of Review

**"Summary judgment should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). "In determining whether that burden has been met, the court is**

**required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."** ***Id.,*** **(citing** ***Anderson v. Liberty Lobby, Inc.,*** **477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);** ***Matsushita Electric Indus. Co. v. Zenith Radio Corp.,*** **475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."** ***Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,*** **446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted).**

**"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."** ***Welch–Rubin v. Sandals Corp.,*** **No.3:03cv481, 2004 WL 2472280, at *1 (D.Conn. Oct. 20, 2004) (internal quotation marks and citations omitted);** ***Martinez v. State of Connecticut*****, No. 3:09cv1341(VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.** ***Fincher v. Depository Trust and Clearance Co.*****, 604 F.3d 712 (2d Cir. 2010).**

**III. Discussion**

**Defendant Local 295's motion for summary judgment is predicated upon its assertion that Manchisi's state law claims of negligent misrepresentation, and negligent and intentional infliction of emotional distress are essentially claims of a breach of the duty of fair representation, and are therefore preempted by Section 301 of the Labor Management Relations Act. The issue of preemption is critical to the question of subject matter jurisdiction, as federal preemption warrants removal on the basis of a federal question only where a claim is completely preempted by a federal statute.**

**"Under the 'well-pleaded complaint rule,' federal subject matter jurisdiction typically exists only 'when the plaintiff's well-pleaded complaint raises issues of federal law,' and not simply when federal preemption might be invoked as a defense to liability."** ***Medical Center v. Teamsters Local 272*****, 642 F.3d 321, 327 (2d Cir. 2011) (quoting** ***Metro. Life Ins. Co. v. Taylor*****, 481 U.S. 58, 63-64 (1987)). However, a corollary to well-pleaded complaint rule exists to allow removal on the basis of federal preemption where Congress has "so completely pre-empt[ed] a particular area [of law] that any civil complaint raising this select group of claims is necessarily federal in character."** ***See Montefiore*****, 642 F.3d at 327 (quoting** ***Metro Life Ins. Co.*****, 481 U.S. at 63-64). In such cases, "Congress has clearly manifested an intent to make causes of action removable to federal court," by completely preempting a particular area of law, and "the federal courts must honor that intent."** ***In re WTC Disaster Site*****, 414 F.3d 352, 372-73 (2d Cir. 2005). Therefore, where the claims raised are not completely preempted so as to fall**

**within the corollary to the well-pleaded complaint rule, federal question jurisdiction is lacking and removal is unwarranted. *See Foy v. Pratt & Whitney Group*, 127 F.3d 229 (2d Cir. 1997) (remanding case to state court where plaintiffs' state law claims were not preempted by §301 of the Labor Management Relations Act).**

**Courts have an independent obligation, at any stage of litigation, to determine whether subject matter jurisdiction exists, "even in the absence of a challenge from any party." *See Arbaugh v. Y& H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 506 U.S. 574, 583 (1999)). Accordingly, prior to addressing the merits of the case on summary judgment, the Court will address the question of preemption and the existence of subject matter jurisdiction.**

**Defendant Local 295 asserts that Manchisi's claims of negligent misrepresentation and intentional and negligent infliction of emotional distress are a "poorly disguised" claim for a breach of the duty of fair representation, which is preempted by Section 301 of the Labor Management Relations Act ("LMRA").**

**Section 301 of the LMRA states that:**

> **"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. §1985(a).**

**The Second Circuit has held that the "'complete pre-emption corollary to the well-pleaded complaint rule' applies to claims under §301 of the LMRA," such that "if the state claims put forward by plaintiffs are preempted by §301 of the LMRA, 'the action may be properly removed to the federal courts, even when the plaintiff's complaint does not itself include a federal cause of action.'"** ***Foy*****, 127 F.3d at 232-33 (quoting** ***Shafii v. British Airways PLC*****, 83 F.3d 566, 570 (2d Cir. 1996).**

**The Supreme Court has instructed that, "[w]here the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is pre-empted."** ***Hawaiian Airlines, Inc. v. Norris*****, 512 U.S. 246, 260-62 (1994) (citing** ***Lingle v. Norge Div. of Magic Chef, Inc.*****, 486 U.S. 399, 405-06 (1988). This "pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements."** ***Lingle*****, 486 U.S. at 409. The Supreme Court has made clear that the pre-emptive effect of §301 has expanded in order to give the policies that animate the provision their proper range, and has cautioned that "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."** ***Livadas v. Bradshaw*****, 512 U.S. 107, 124 (1994) (citing** ***Allison Chalmers Corp v. Lueck*****, 471 U.S. 202, 210 (1985). As such, the Supreme Court has stressed that "it is the legal character of a claim, as 'independent' of rights under the collective bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be**

**pursued) that decides whether a state cause of action may go forward." *Lividas*, 512 U.S. at 123-24 (internal citations omitted).**

**The question of preemption presented in the current case is nearly identical to the question of preemption considered by the Second Circuit in *Foy v. Pratt & Whitney Group*, 127 F.3d 229 (2d Cir. 1997). In *Foy*, the plaintiffs asserted in state court claims of negligent misrepresentation predicated upon a statement made by an employee of the defendant-corporation following an announced consolidation of several production facilities purportedly assuring employees that they would be given transfer opportunities before being subjected to a layoff. After conducting a thorough analysis of the nature of the state law claims raised, the Second Circuit reversed the district court and ordered the case to be remanded to state court, concluding that "plaintiffs' state law negligent misrepresentation claims are not preempted by the LMRA because they rest on independent state law rights that do not require interpretation of the CBA."**

**The Second Circuit began its analysis by considering the elements of the state law claim asserted, which are the same as those applicable to the current case. As the Second Circuit correctly noted, the Connecticut Supreme Court has adopted the Restatement (Second) of Torts as setting forth the governing principles for a negligent misrepresentation cause of action, as:**

> **One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Foy*, 127 F.3d at 233**

**(citing *Williams Ford Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575, 657 A.2d 212 (1995)).**

**The Second Circuit then addressed the defendant's contentions that two of the elements, the falsity of the statement and justifiable reliance, necessitate an interpretation of the CBA. *Id.* at 233-234. Specifically, the defendant identified two provisions of the CBA, one mandating certain layoff procedures, and another authorizing the defendant-corporation to offer an employee the option to transfer to another job prior to a layoff upon the condition that such transfer not conflict with the seniority rights of another employee. *Id.* at 234-235. The Second Circuit concluded that the determination of the falsity of the representation made addressed a definite transfer opportunity prior to a layoff, a circumstance "not called for in the CBA and is outside of the ambit of that agreement." *Id.* at 234. Further, the Second Circuit noted that veracity of the statement is a fact-driven analysis, "and will primarily concern what was or was not stated at the summer 1992 meeting." *Id.* Regarding justifiable reliance, the Second Circuit held that the provision authorizing pre-layoff transfers was "permissive and imposes no obligation to make such transfers," and therefore "[a]ssuming that the alleged misrepresentation was made, interpretation of this provision would not be necessary to resolve plaintiffs' state law claims." *Id.* at 235.**

**Here, Defendant Local 295 asserts in the "preliminary statement" to its motion for summary judgment that Manchisi's claims of negligent misrepresentation are preempted by §301 of the LMRA, but fails to provide any substantiation for this assertion in the body of its motion. Unlike the defendant-corporation in *Foy*, Local 295 has not identified any specific provisions of the**

**applicable collective bargaining agreement which require interpretation in order to adjudicate Manchisi's state law claims, beyond referring to the Effects Bargaining Agreement ("EBA") and the Collective Bargaining Agreement of 2004-2009 ("CBA") as sources of "the Union's duty to advise Manchisi about his options with respect to DHL's layoffs of the employees." [Dkt. #53, Def.'s Reply Br., p. 4]. The duty outlined in the EBA requires "[t]he Company agrees to transmit detailed bid instructions to the Union membership, including the training and licensing qualifications necessary to work at the JFK Gateway facility." [Dkt. #53, Attachment 1, Ex. A, ¶ 11]. This duty is confined to noticing the union members only. It does not include a duty of accurate representation, and it only applies to DHL. Similarly, the CBA contains no provisions regarding a duty of accurate representation, despite Defendant's claim to the contrary.**

**Acknowledging that Local 295 has failed to establish that evaluating any of the elements of the asserted state law claims would require interpretation of the collective-bargaining agreement, the Court finds that the claims asserted address solely the representations made by DHL to Manchisi in its letters dated October 29, 2008 and December 15, 2008. Accordingly, consistent with the Second Circuit's thorough analysis in *Foy*, presenting circumstances strikingly similar to the instant case, where Manchisi's state law claims do not require interpretation of the CBA, such claims are not preempted by §301 of the LMRA. *See Foy*, 127 F.3d at 232.**

**The Defendant fails to address entirely the question of preemption as it pertains to Manchisi's claims of intentional and negligent infliction of emotional distress constitute independent state law claims. However, it is clear these claims are governed neither by the EBA nor CBA, and thus also are similarly not pre-empted.**

**Where Manchisi's state law claims are not clearly preempted by a federal statute, removal of such claims may not be predicated upon the existence of a federal question. *See Foy*, 127 F.3d 229 (remanding case to state court where plaintiffs' state law claims were not preempted by §301 of the Labor Management Relations Act); *see also Montefiore*, 642 F.3d at 327 (holding that removal to federal court on the basis of preemption is ordinarily barred by the well-pleaded complaint rule unless such preemption falls within the complete preemption corollary to the well-pleaded complaint rule).**

**In the absence of a federal question, removal jurisdiction may only be sustained if none if the parties is a citizen of the State of Connecticut. *See* 28 U.S.C. §1441(b); *see also In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 674 F.Supp. 2d 494, 507 n.80 (S.D.N.Y. 2009) (recognizing that 28 U.S.C. §1441(b) prohibits "defendants that are citizens of the state where the action is filed from removing to federal court on the basis of complete diversity even though plaintiffs can file in federal court on the basis of diversity under section 1332.").**

**It is undisputed that Local 295 represents employees in multiple states. Defendant Local 295 acknowledges that it "is the exclusive collective bargaining**

**representative for couriers employed by DHL in the Greater Metropolitan Area." [*See e.g.* Dkt. #40, Statement of Undisputed Facts, ¶ 1]. Plaintiff, Manchisi, substantiates this assertion, reporting that Local 295 represents employees in New York, New Jersey and Connecticut. [Dkt. #48, Pl. Rule 56(a)(2) Stmt. ¶ 5].**

**In *United States Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 146-47 (1965), the Supreme Court addressed the applicability of diversity jurisdiction to a case between a North Carolina corporation filed in North Carolina state court against a union with its principal place of business in Pennsylvania, but with members in both Pennsylvania and North Carolina. The Supreme Court held that the citizenship of unincorporated associations is a question properly answered by the legislature and affirmed the decision of the Fourth Circuit's direction that the case be remanded to state court, reasoning that, as with unincorporated associations, for purposes of diversity jurisdiction, the citizenship of the members of labor unions is controlling. *See R.H. Bouligny, Inc. v. United Steelworkers of America, AFL-CIO*, 336 F.2d 160 (4th Cir. 1964).**

**Following the Supreme Court's decision in *Bouligny*, the Second Circuit has held that for the purposes of diversity jurisdiction, unincorporated associations, such as a labor unions, are considered "to be citizens of each and every state in which the association has members." *Baer v. United States Auto. Ass'n*, 503 F.2d 393 (2d Cir. 1974). "Any trend toward erosion of this rule creating multiple state citizenship for unincorporated associations, see e.g. *Mason v. American Express Co.* seems to have been abruptly halted by *United States Steelworkers v. R.H. Bouligny, Inc.*." *Id.* (citations omitted); *see also Grupo***

***Dataflux v. Atlas Global Group, L.P.*****, 541 U.S. 567, 569 (2004) (holding that a partnership, which is an unincorporated association, is a citizen in each state where any of its partners is a citizen);** ***Carmen v. Arkoma Associates*****, 494 U.S. 185, 195 (1990) (holding that citizenship of an association is the citizenship of all its members).**

**Accordingly, where Defendant Local 295 acknowledges that it has members in Connecticut, it is considered a citizen of Connecticut for purposes of diversity jurisdiction and thus may not remove this case to federal court in the absence of a federal question. 28 U.S.C. 1441(b).**

## IV. Conclusion

**Based on the aforementioned reasoning, where no federal question exists, and as the Defendant Local 295 is considered a citizen of the State of Connecticut for purposes of diversity jurisdiction, removal jurisdiction may not exist pursuant to 28 U.S.C. 1441(b). Therefore, the Court hereby remands this case to state court.**

**IT IS SO ORDERED.**

***/s/***

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: April 13, 2012**